The next case before us this morning, and our last case today, is 23-2116 Davidson Oil Company v. City of Albuquerque. And when you are ready, counsel, we are ready. Good afternoon and may it please the court. My name is Robert Desiderio, representing the City of Albuquerque. Joining me today are Angelica Duran, a colleague, and Devin King, the Deputy City Attorney for the City of Albuquerque. I'd like to reserve three minutes for rebuttal. The city is requesting that this court reverse the district court when the district court held that the city breached an implied covenant of good faith when it exercised the termination for convenience clause. And secondly, assuming there was a breach of the implied covenant, the city is asking that this court reverse the district court as to the awarding of damages for the hedge losses. The city is not appealing the decision of the court awarding Davidson Oil its lost profits. In my brief time I have here, I'd like to respond to Davidson Oil's arguments in its response brief or answer brief to our brief in chief. Davidson Oil makes three arguments. First, Davidson argues that the decision of the district court holding that the city of Albuquerque did not breach the contract should be reversed, even though Davidson Oil never cross appeals. Secondly, Davidson Oil is arguing that the city breached an implied covenant of good faith and fair dealing when it exercised the termination clause by acting in bad faith when it did so. And thirdly, Davidson is arguing that it is entitled to the losses on its hedge contracts as incidental damages under section 2-710 of the New Mexico Uniform Commercial Code. I'd like to take these arguments in order. The first argument that this court can reverse the lower court's decision that the city did not breach the underlying contract is fundamentally wrong with it. It is universally held that if an appellee is to challenge a judgment of a lower court, it must do so by cross appealing. I understand that, but going to the merits rather than whether or not a cross appeal is necessary. Isn't the issue essentially this is, for whatever reason, the city was trying to get a better price? Isn't that what they were doing? Yes, your honor. The city was trying to reduce its cost. And it was doing so because of the consequences of the pandemic. Is there anything in the record that indicates what studies, what things they relied upon in March to determine that their revenues would be dramatically affected? And therefore, that's the extra factor. Your honor, the record indicates that the chief financial officer and the other financial officers of the city, based upon information that was available at that time, feared that there would be a serious impact on the collection of grocery seats. What was it that they relied upon? That's what I want to know. The New Mexico Department of Finance sent a warning out to each of the cities and locales, telling them that because of a pandemic, they could use rollover budgets, which would mean that their budget would be the prior year's budget and not the current year's budgets. So the state of New Mexico had decided that there was going to be a crisis at the local city area as to the ability of local governments to provide the services necessary for its citizens. And all this is in the record? The fact that the state of New Mexico Department of Finance sent to the cities, allowing them to use a rollover budget, is in the record. And the reasons you stated are in the record? All the reasons are not in the record, your honor. It is just that the state recognized this and allowed them to do it. Is there anything in the record that indicates the quantum, the size, of this impact on revenues and therefore on the budgets? There is nothing in the record, your honor, indicating the size of it in March. Well, is there anything in the record of any time after that?  I was just responding to your question before as to March. It had to be solely done on prediction as to the consequences. Let me ask you this. What if instead of a pandemic, they were dealing with a major employer in Albuquerque who shut down and left? Would that be the extra factor that would allow the invocation of this clause to get a better price? Your honor, it's hard to answer that directly. I would say that probably not with it. The difference is that the consequences and the crisis of the pandemic was such that no one had predicted it and no one had planned for it. I understand that. But what I'm asking about is, was that quantified so that it can be determined whether it's really significant? You know, and at the time they anticipated it or after the fact measured it, you know, were they wrong? Your honor, there is nothing in the record showing a quantification of it. Because in March, there was no evidence or information at the time, only the expertise of the financial officers who had to plan for the city. All right. So in one sense that they were trying to get a better price. Based on this additional factor to invoke the termination clause that they were already sure about, they didn't know. Isn't that a fair way to summarize what you're telling me? There was nothing in the record that shows that, again, that they knew of the total amount. Except that, again, based upon their knowledge, the city financial officers knowledge and expertise, they predicted that there would be a serious reduction in gross receipts, taxes, which would have a major impact on providing services for the citizens of New Mexico. And just to button that up, the city employees didn't try to make an estimate of what that reduction would be. They just thought it was going to be substantial. There's nothing in the record showing that they did that, Your Honor, only that they knew or believed it was to be substantial. So it seemed to me that from some of the record that the precipitous price drop was a justification for terminating for convenience. And so is that fair characterization? If I understand, Your Honor, the justification was the seriousness of the price, not the price drop, but the consequences of the pandemic, which required that the city revert to a prior year's budget for which it had not planned the contracting question. And it had to readjust its budget completely. So you were all in agreement that if all we're talking about here is a 65% drop in price, that would not be grounds to terminate for convenience. In my opinion, Your Honor, that would not be grounds for doing it. The grounds for the exercise of the termination for convenience clause obviously was to reduce costs with it. But that was because the city had an obligation to its citizens to be able to provide its services, which require a reduction in its budget. And that was what precipitated the exercise of the clause, the termination for convenience clause. And I think Judge Murphy might have explored this with you a little bit. But there are other things that could happen to the city. For example, they could make a major budgeting error that put them in a serious financial situation. And you wouldn't contend that in that situation, it would give grounds for terminating for convenience. I would not contend, Your Honor, not knowing the total fact circumstances, but I don't think that that would be sufficient. The general rule is that to exercise and apply. I'm sorry. A termination for convenience clause. There has to be a change in circumstances unanticipated by the parties. That was clearly what occurred with the pandemic. Counsel, when you rely upon this new letter from the state of New Mexico, in order for it to have any significance, don't we have to be able to compare the budget they thought they would be dealing with in March and the budget of the previous year and determine what the differences are and whether they're so significant that it can be invoked as the X factor? Your Honor, again, in March, when the pandemic was existed, I mean, there was in New Mexico a public health order with it. And so what the city had to do was, based on its expertise, decide how much its budget should be. In March, they weren't even sure. That's why the state allowed the cities to go to rollover budgets and to review them monthly. All right. So they had no budget and they were working on the budget and they didn't know what to do. And so the state said, just just rely on last year's budget. Correct. In a sense, yes, Your Honor, you can do that and review it every month as more information becomes available. Can I switch gears in March when this invocation of the clause took place? And I may, I'm not good at name pronunciation. Mr. Bakta? Yeah, Mr. Bakta, the chief financial officer for the city. He says, the question is, so your testimony is that Davidson knew the contract could be terminated for convenience due to substantial price decline. But the city did not understand the same thing about its own contract. Answer. We understand that we can cancel the contract for any reason. Question. There's no limit. Answer. There's no limit on that. And I believe they also understood that because they particularly were negotiating that particular clause. Now, isn't that an indication that on March, when this clause was terminated, that the city thought it could invoke the clause for any reason? Mr. Bakta was not a lawyer and was not aware of the requirements for terminating. But later on in his deposition, it's in the record, he indicates that they could not predict at the time of the contract, the pandemic. And it was the pandemic that led to this problem. I understand, but he did testify that it was the city's position they could cancel for any reason. That's what the termination for convenience clause says. You can cancel for any reason. It is. But we know that that's we know that that's not the law in the matter. You have to have a change of circumstances and you have to do so in good faith. And that's what the district court held when it decided that the city had not breached the contract with it. Remember, there was no decision of the district court that the city breached the contract. The court held that the city invoked the termination for convenience clause in good faith. My time is up. Thank you. May it please the court, your honors. My name is Ross Crown. I am counsel for Davidson Oil Company, the plaintiff and appellee in this case. The city sued the city of Albuquerque.  Albuquerque and Davidson Oil, sorry I'm shouting here, entered into a contract by which Davidson Oil would supply all of the city's fuel requirements for at least one year at fixed prices. To help guarantee those fixed prices, the contract further required that Davidson Oil hedge its position. Immediately following a sudden decline in oil prices and before Davidson Oil could even begin making deliveries under the contract, the city invoked the termination for convenience clause and decided to purchase its fuel requirements from another vendor at what were then lower market prices. Meanwhile, in accordance with the contract, Davidson Oil had purchased hedge contracts and were faced with a loss on those hedge contracts upon the termination by the city. There were situations where even if the city had performed, but at lower than anticipated levels, that you would have lost money on those hedge contracts too, weren't there? I believe that's not an issue that came up in the case, but I believe that's theoretically possible. That's a risk that Davidson Oil took because the contract did provide that the city would purchase only its requirements under its contract, only its fuel requirements. And so Davidson certainly took the risk that its requirements would be less than expected. The city did provide data concerning past requirements that Davidson Oil was able to evaluate as part of its proposal. Did the city ever take the position that that meant that your damages were overstated because you had been dealing in fewer volumes, less volume? No, I don't believe the city took that position. You also undertook the risk of having a termination for convenience clause in the contract and specifically negotiated the terms of that clause, right? Well, they did negotiate the length of the notice period. And yes, Davidson Oil was aware of termination for convenience clause. However, it had no reason to anticipate that the clause would be exercised in the manner it was, which that manner was in violation of New Mexico law and our judgment. All contracts are subject to public policy. Well, you didn't anticipate the pandemic, did you, when you entered into the contract? No, and the contract I don't think was affected by the pandemic. Maybe it's one of the few things in this world that wasn't. Everybody's claiming the pandemic affected everything. But the pandemic, first of all, at least in terms of the city, claims that led to a sudden decrease in the price of oil. I don't know if that's exactly true. I guess it's assumed for the purposes of this case that it is. But the contract was designed to accommodate that risk. I mean, it was a fixed price contract because the city of Albuquerque realized that the oil market is volatile and they were willing, in order to avoid spikes in oil prices, they were willing to contract for fixed prices. So to say that the price of oil changed is really kind of meaningless because that's what the contract anticipated would happen and that's why it was a fixed price contract. The other claimed effect of a pandemic on the city is twofold. One, they said, well, we may not need as much oil because there'll be less economic activity or less city operations during the pandemic. That made no difference whatsoever because it was a requirements contract. And the city was only obligated to procure the amount of fuel it actually needed. The big argument the city made was, well, we have a fear that our revenues are going to drop as a result of the pandemic. I mean, that was not out of the realm of possibility, was it? In March of, I can't remember the year, I know that we went home in 2020. You know, people thought that the effects of the pandemic could be catastrophic on the entire world economy. I mean, it sort of was. Yeah, well, at the time, really no one knew that. The price decline in the price of oil that prompted the termination actually bottomed out in April, which was the month after the termination. And during the first year of the contract term, the price of oil actually ended up exceeding the fixed price. But, you know, in my mind, the parade of horribles about the effect on city revenues is just another way of saying the city didn't want to pay higher prices. I mean, no actor, even a governmental entity, wants to pay more than they have to. So to say that we feared that we wouldn't have enough revenue is just another way of saying we wanted cheaper prices. And that's again what the contract took out of the equation by saying, no, we're not going to worry about what the world oil market is doing. We're going to agree to fix prices for fuel. Is there anything in the record that indicates what else the city did in light of its fear about its revenues? Well, there really isn't much at all in the record except the city says that they terminated for convenience other contracts for the same reason. However, as indicated in the record, the city has hundreds of procurement contracts. Besides the Davidson oil contract, they terminated for convenience during the pandemic a total of four other contracts. And as explained in the record, they all look like highly inconsequential contracts involving things like cages. Cages for animal control vehicles and I think some audiovisual equipment for one city office really looks to me like minimal stuff. So I think it's fair to say that termination for convenience was not a key city strategy for coping with the pandemic. Does the record indicate that termination for convenience provisions are in all contracts with vendors? Suppliers? Do all the city contracts? I believe so, yes. Is that a matter of city policy? As far as I know it is. Well, is that in the record? Well, it's a standard. That I don't know if it's in the record, but there is a standard form that was appended to our contract that recites the standard terms and conditions and the termination for convenience clause is part of that. And I believe it's also authorized by the New Mexico Procurement Code. So the attachment looks like it's a standard form contract or a part of a standard form contract? Yeah, there's a page of standard terms and conditions and then obviously there's many pages involving the particulars of this oil supply contract. What kind of an event do you think would allow the city to initiate the termination for convenience clause? Earthquake? Well, you know, the problem is they can initiate a termination for convenience. The problem here is they didn't want to pay for the reliance damages that Davidson Oil sustained in attempting to perform the contract. That's why Judge Brack, it's our position that Judge Brack could have found a breach of contract. He elected to find that there was not a breach of the express terms, but a breach of the implied covenant because Davidson Oil sustained damages entering into these hedge contracts at the direction of the city. And then the city comes back, I'm sorry? But the district court didn't deal much with the proposition that the determination on the bad faith claim runs smack in to the termination for convenience clause. I mean, it was like it didn't exist. And you cannot have a bad faith claim that is contrary to the provision of the contract. Well, that's true. But Judge Brack said that, well, again, it's our position for the reasons set out in the briefing that the termination for convenience clause was exercised in an inappropriate way. But even if we accept Judge Brack's analysis, I think he's correct in saying that in disregarding the reliance damages sustained by Davidson Oil in following the city's directions and going and hedging the contract, they committed a breach of the implied covenant. So your position is a little different than the district court's, and that is that there's no clash between a bad faith claim and a provision of the contract if that provision is imposed in an unfair manner. Is that your position? I think, well, my position is that the termination for convenience clause was exercised in a manner contrary to law because it fails to meet the tests that are laid out in federal law for determining when a termination for convenience is proper. That's a contract claim. That's not a bad faith claim. That's a breach of contract, right? Yeah, well, that's my contract argument. Well, I'm talking about, you know, I don't see how this bad faith claim survives because it clashes with the termination for convenience clause. Well, I mean, it's not a bad faith claim. I mean, it's another form of contract claim. It's a breach of the implied covenant of good faith and fair dealing. Well, the implied covenant cannot be contrary to another express covenant. Yeah, well, I don't think it is contrary because what Judge Brack was addressing were the reliance damages. So Judge Brack was not saying that... Well, you have to have a breach first to get to damages. Right. Well, he found the implied covenant was breached. Yeah, and I mean, we're going round and round. Right. But I had the same problem. If you cannot have an implied covenant that writes out a term of the contract. So you can't have a breach of the implied covenant here that ignores the fact that you've got a termination for convenience clause. So it seems to me your issue is whether you have a breach of contract in terms of how that termination for convenience clause was applied. Am I making sense to you? It makes sense to me, but I'm not going to answer your question. Yeah, I wish I had Judge Brack here to help me out. I don't know if I'm necessarily defending Judge Brack. I think it's important to establish that the termination for convenience clause was itself breached. But I think what Judge Brack would say is the city was free to terminate the contract, but they still, at the direction of the city, they required Davidson Oil to incur expenses in reliance on the contract. Again, you don't get to those damages until you first have a breach. And so help me out again. When is it proper, in your view, for the city to terminate under the termination for convenience clause when there's an unforeseen event like a pandemic or an earthquake or a flood or hurricane? I mean, what did they need here more than the pandemic and the uncertainty and fear about their revenues for the future as a result? Well, they had to act in good faith and not be just looking for a cheaper price, which under some circumstances may be okay. But when you have a contract, if you look at the questions and answers, the city is endlessly... So they, in good faith, believed that their revenues were going to be seriously impacted due to the pandemic, then you would say it was okay. No, I would not say that. I would say that they cannot establish a change in circumstances as it relates to this particular contract. All they can show is there was a price drop in the world oil market which this contract anticipated. That's why that contract was there. Well, the whole world went home. That's not a change in circumstances? Not as it relates to this contract, no. Then they say that we don't know if it's going to affect our revenues. We may have a revenue problem. As Judge Murphy's questions elicited, there's no such... There's not an explanation of that in the record. So they didn't... Their fear was not documented enough. Well, it was not documented. Plus, all they're saying is we didn't want to pay the higher prices, so we stuck with the fixed prices because that's what they contracted for. Then they're saying, we may not have enough money, so now we don't want to pay for those contracts. They ended up saving a claim over a million dollars and Davidson Oil lost $600,000 to allow the city to save money. I have a question about the implied covenant issue. It was your claim. You had a theory before the district court on how the city's action violated the implied covenant. Sounds like it might have been different than what Judge Brack thought as far as that all worked. What was your theory? What did you argue to the district court about how the implied covenant was breached? Well, I think that the city disregarded the purpose of the contract and the spirit of the contract in attempting to save money by not dealing with the consequences of their attempt. That's the same, though, as your breach of contract theory. Well, they could terminate. The breach of contract theory says they shouldn't have terminated under these circumstances. I guess the implied covenant says, well, if they were okay terminating, they still breached the implied covenant by not compensating Davidson Oil for the reliance damages that it suffered and the other damages that it suffered as a result. But the big distinction between this case and most of the case law in this area is that the city specifically directed Davidson Oil to enter into hedge contracts. So isn't one conclusion you can draw from what you just said is that if the termination for convenience clause is appropriately, there's a basis to invoke it. If there's a basis to invoke it, you still have to pay damages to a vendor like Davidson. I think that seems contrary to the termination for convenience clause. Frankly, I think the termination for convenience clause used by the city and the state of New Mexico itself lacks consideration because compared to the federal version, the federal version requires... We're not going there. Right? I mean, this is not a lack of consideration case. Yeah, I think it is. It's an illusory contract the way the city prefers to interpret it. But that's not argued. Yeah, that's argued at length. It's an illusory contract without mutual consideration. It's a heads-I-win-tails-you-lose contract. But that's the contract claim. That's not a bad faith claim. That's the contract claim. But the contract... My argument, Judge Brack, is the contract lacked consideration. Unlike the federal version of the contract which says costs of performance will be paid before termination takes effect, the state version has no such provision. Thank you. All right. Thank you. You're out of time. Thank you. Because he went three and almost four minutes over, if you'd like some rebuttal, we'll be happy to provide it. Why don't you give him three minutes? Thank you, Your Honor. Just a few points. First, I'd like to reiterate that the district court made a finding that the city did not breach the contract when it exercised the termination for convenience costs. Isn't that a conclusion of law, not a finding? No, Your Honor. The court found as fact that the city's purpose was to reduce its cost resulting from what was going to occur because of the pandemic and that that exercise was therefore done in good faith. And that's a conclusion of law from the evidence, right? That's not a finding. This is summary judgment. You're right, Your Honor. It's a conclusion from the facts in the record where we argued that and Davidson argued the opposite and the district court agreed with our position with it. Secondly, this contract, determination for convenience clause cannot be part of an illusory contract with it. Not only is there the requirement of good faith, which takes it out of that, but also the case law has held that where the person exercising determination clause has a notice requirement. That is a sufficient obligation to meet the contractual rule of consideration. So there was no illusory contract in this case with it. And lastly, Your Honor, I would submit that Davidson did accept the risk of an uneventful or an eventful event occurring. So didn't the city take the risk when it signed the contract that prices were going to go down from what they agreed to pay to Davidson? Yes, Your Honor, they took the risk. And that's what happened. But again, they also required that Davidson take a risk that if there was sufficient reason, that is change of circumstances and acting in good faith, that they could terminate the contract. Davidson was aware of that. They negotiated with the city as to the termination for convenience clause. Well, as to whether or not it went in, they asked it to not be in. And basically, it sounds like because of the standard conditions, it's just a policy of the city. It was going to be in. Your Honor, but then the city countered with a 90-day notice. And Davidson and the city agreed to a 60-day notice with it. My point is, this was a risk that Davidson accepted. My time is up. Thank you, Your Honor. Thank you, counsel. We will take this matter under advisement and we appreciate your argument today. The court will be adjourned until tomorrow at, I think, 9. Thank you.